STATE EX REL. MacNAUGHTON, Respondent, vs. NEW AMSTERDAM CASUALTY COMPANY, Appellant.

*September 10—October 8, 1957.*

For the appellant there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Lloyd J. Planert.*

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan.*

MARTIN, C. J. The bond in question was that required under sec. 218.01 (2) (h), Stats., to be furnished by a car dealer when the licensor has reasonable cause to doubt the financial responsibility of such dealer applying for a license to do business in Wisconsin, "as indemnity for any loss sustained by any person by reason of any acts of the licensee constituting grounds for suspension or revocation of his license hereunder." It was issued and filed on September 18, 1952, by the appellant covering United Motor Sales, Inc., a licensed used-car agency operated by Norbert De Witt, its secretary-treasurer. The bond period was September 18, 1952, to December 31, 1953.

On September 30, 1953, W. R. MacNaughton, a drug salesman, entered into a consignment contract with United Motor Sales for the sale of his 1952 Pontiac automobile at a price of not less than $1,650 net to him. He left the car with De Witt to be sold and gave him his certificate of title thereto, indorsed in blank, in order to expedite the sale if a buyer should be found while MacNaughton was away on a sales trip.

On or about October 5, 1953, United Motor Sales, without MacNaughton's knowledge or consent, mortgaged the Pontiac, together with a number of other cars, to Rock Finance Company, an innocent party, as security for money borrowed.

On April 7, 1954, United Motor Sales sold the Pontiac, together with other cars, to the California Car Company, an innocent purchaser for value, who knew of the Rock Finance Company mortgage but did not know of MacNaughton's

interest in the Pontiac. The check which De Witt received from the California Car Company was indorsed by him and given to Rock Finance Company to satisfy the mortgage.

In 1953 and the early part of 1954 MacNaughton saw his car on the lot of United Motor Sales and occasionally stopped in to ask De Witt how the sale of it was going. He did not learn the car was mortgaged until sometime in April of 1954.

It is the position of the appellant on this appeal that the bond is one for indemnity against loss; that MacNaughton sustained no actual loss until the sale to the California Car Company, which was after the expiration of the bond, and therefore it is not liable.

As required by the statute, the bond in question provided that the company would pay to the state for the benefit of any aggrieved person "the amount of any loss sustained by such person by reason of any act or failure to act of the licensee constituting grounds for suspension or revocation of his license under section 218.01."

The grounds for suspension or revocation enumerated in sec. 218.01 (3), Stats., include:

"8. Having made a fraudulent sale, transaction, or repossession. . . .
"11. Having indulged in any unconscionable practice relating to said business."

De Witt's act of mortgaging the MacNaughton Pontiac on October 5, 1953, constituted a fraudulent conversion,— grounds for suspension or revocation of his license under the statute. That act took place within the bond period. Appellant contends that MacNaughton suffered no actual loss, however, until the car was sold the following April. We cannot agree. MacNaughton's loss was actual when the car was mortgaged, whether he knew it or not. Appellant argues that the mortgaging caused no more loss to MacNaughton than if De Witt had taken ten dollars out of his pocket

without his knowing it, used it for two weeks, and then put the money back without his knowledge. The analogy fails because by his act De Witt placed himself in a position where he could not "put it back," and where he could not perform his contract with MacNaughton. After the date of the mortgage MacNaughton's interest was subject to the mortgage; he could not have prevailed against the mortgage interest of an innocent party.

In view of our holding that the loss occurred when the car was mortgaged, it is unnecessary to discuss the authorities cited by appellant as to the two classes of contracts of indemnity.

*By the Court.*—Judgment affirmed.